UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| ARDEGENE R. WHITE HAWK, Individually, and as SPECIAL ADMINISTRATOR AND PERSONAL REPRESENTATIVE of the ESTATE OF LYNETTE A. GOGGLES, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>TRIBAL EM a/k/a TRIBAL EM, PLLC, DR. NELSON SANABRIA, THE UNITED STATES OF AMERICA, LACY J. CORTES, HEATHER A. JOHNSON, MEAGAN ULMER, DALE AVIATION, INC. d/b/a MEDICAL AIR RESCUE COMPANY (MARC), and JOHN DOES ONE THROUGH SEVEN, individually, and jointly and severally,<br><br>Defendants. | 5:21-CV-5089-LLP<br><br>MEMORANDUM OPINION AND ORDER DENYING FIRST MOTION IN LIMINE |

Pending before the Court is Plaintiff's First Motion in Limine. (Doc. 55). For the following reasons, Plaintiff's Motion is denied.

## BACKGROUND

On March 2, 2018, Lynette Goggles was being treated at the Pine Ridge Indian Health Service Hospital. Ms. Goggles was intubated with an endotracheal tube in preparation for her transportation to Rapid City Regional Hospital. The first two intubation attempts of Ms. Goggles by Dr. Nelson Sanabria, a contract employee of Tribal EM, were unsuccessful and Ms. Goggles was intubated a third time. Dr. Sanabria testified in his deposition that an x-ray was taken before he removed the endotracheal tube the second time and that a second x-ray was taken after the third intubation attempt. (Doc. 57-1, Sanabria Dep. 77:21-78:4). The parties agree that only one chest x-ray image documented as deposition Exhibit Number 17, and Exhibit Number 28, has been produced. Defendants provide that although at the time of his deposition, Dr. Sanabria remembered a second x-ray being taken, no other x-ray or CT Scan films exist of Ms. Goggles'

1

chest area (and specifically depicting the presence/non presence of an endotracheal tube). Ms. Goggles died before being transported to Rapid City Regional Hospital.

On July 5, 2023[1], Plaintiff, Ardegene White Hawk's, Individually, and as Special Administrator and Personal Representative of the Estate of Lynette Goggles, Deceased, filed her First Motion in Limine Excluding Future Production of non-disclosed chest x-rays (and/or modifications thereto) and/or chest CT Scans (and/or modifications thereto) of Decedent from March 2, 2018. (Doc. 55). Plaintiff moves the Court to enter an order excluding Defendants, their counsel, and witnesses from making any mention of, argument, or introduction of testimony, documents or exhibits of any additional non-disclosed chest x-rays (and/or modifications thereto) and/or chest CT Scans films/images of Decedent on March 2, 2018, other than the one chest x-ray image which was documented as Exhibit Number 17, and/or Exhibit Number 28 during Decedent's presence at the Pine Ridge Indian Health Service Hospital on March 2, 2018. Plaintiffs also move the Court to provide "an adverse inference as to placement of the ET tube in [Ms. Goggles] so that said inference is provided in favor of Plaintiffs' version of the facts, and adverse to the Defendants' version." (Doc. 56 at 424). Plaintiff argues that "the absence of a 'second chest x-ray' has been attempted to be utilized by the Defendants collectively, to suggest that the 3rd intubation attempt was completely appropriate and successful. However, patient took a desperate turn for much worse within minutes after the 3rd intubation attempt and after the first injection of fentanyl." (Doc. 56 at 423).

Defendants Tribal EM, Dr. Nelson L. Sanabria, Lacy J. Cortes, and Meagan Ulmer have filed an opposition to Plaintiff's First Motion in Limine. (Doc. 61). Defendant Dale Aviation, Inc. has filed an opposition to Plaintiff's Motion in Limine and the United States has joined Dale Aviation's Opposition. (Docs. 62-63). In opposition, it is argued:

> On July 5, 2023, Plaintiff filed the Motion in Limine and seeks an Order that excludes "Defendants, Defendants Counsel, Defendants' experts or Defendants' witnesses from producing/using/referring to . . . any additional non-disclosed chest x-ray" of Ms. Goggles and request an adverse inference as to the placement of the ET tube. This request stems from a single witness's testimony (Dr. Nelson Sanabaria), who testified that there were two x-rays taken of Ms. Goggles on March 2, 2018. Critically, no other witness has corroborated this claim of a second x-ray and the USA has disclosed a radiologist supervisor who is

---

[1] The discovery deadline is August 23, 2023, and the trial is scheduled to begin on June 24, 2024. (Doc. 49).

2

> designated to testify that only a single x-ray was taken of Ms. Goggles on March 2, 2018 and that the single x-ray has been produced in this litigation.
>
> Despite these facts, Plaintiff seems to grasp onto the idea of a withheld second x-ray to support a conspiracy theory in order to strike evidence that may not even exist. The truth of the matter appears to simply be that Dr. Sanabria misremembers a second x-ray occurring on March 2, 2018. That is an insufficient basis to support Plaintiff's request for an adverse inference. Further, a request for an adverse inference is not presented by a Motion in Limine, and there is no evidence to support any theory of spoilation and certainly not to the extent of gaining an adverse inference.
>
> If Plaintiff's request was actually solely to exclude Dr. Sanabria's testimony or any inferences of a second x-ray so as to prevent jury confusion, the parties likely could have come to a stipulation. . . . Plaintiff instead asks this Court for a premature, extreme ruling precluding evidence that has not been discovered, and asking for an adverse inference against the Defendants that the [endotracheal] tube was misplaced without any actual evidence to support such a ruling.

(Doc. 62 at 495-96).

## DISCUSSION

"[T]he standard [for giving an adverse inference instruction] is the same under either state or federal law – there must be a finding of intentional destruction indicating a desire to suppress the truth." *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746 (8th Cir. 2004) (first citing *Lewy v. Remington Arms Co.*, 836 F.2d 1104, 1111-12 (8th Cir. 1988) (citing federal law for the general proposition that the adverse inference instruction is appropriate only where the spoilation or destruction of evidence is intentional and indicates a fraud or desire to suppress the truth)); *State v. Engessor*, 661 N.W.2d 739, 755 (S.D. 2003) ("An instruction on the inference that may be drawn from the spoliation of evidence is proper only when substantial evidence exists to support a conclusion that the evidence was in existence, that it was in the possession or under the control of the party against whom the inference may be drawn, that the evidence would have been admissible at trial, and that the party responsible for destroying the evidence did so intentionally and in bad faith."). "An adverse inference instruction is a powerful tool; it brands one party as a bad actor and necessarily opens the door to a certain degree of speculation by the jury, which is admonished that it may infer the presence of damaging information." *Davis v. White*, 858 F.3d 1155, 1160 (8th Cir. 2017).

3

The Court finds that Plaintiffs' First Motion in Limine is premature and that there is no evidence of intentional or bad faith destruction of a second x-ray. No adverse inference will be ordered at this time. Accordingly,

IT IS HEREBY ORDERED that Plaintiff's First Motion in Limine (Doc. 55) is DENIED.

Dated this 26th day of September, 2023.

BY THE COURT:

/s/ Lawrence L. Piersol
Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK
/s/ Matthew Thelen